UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X
WINGSPAN RECORDS, INC.,

                     Plaintiff,

         - against -            **MEMORANDUM AND ORDER**

WINSTON SIMONE and DAVID SIMONÉ,     12 Civ. 2172 (NRB)

                   Defendants.
----------------------------------------X
**NAOMI REICE BUCHWALD**
**UNITED STATES DISTRICT JUDGE**


    Before the Court is plaintiff's motion to reconsider our dismissal of claims against the last remaining defendants in this action.[1]   Plaintiff's motion does not set forth "controlling decisions or data that the court overlooked," Shrader v. CSX Transp., Inc., 70 F.3d 255, 257 (2d Cir. 1995), but instead advances a mixture of new arguments that plaintiff did not previously raise and old arguments that we considered and rejected.   Accordingly, we deny plaintiff's motion.

**I.**    **BACKGROUND**

    Our opinion of May 15, 2014, sets forth the underlying facts in detail.   See Wingspan Records at *1-2 (drawing facts

---

[1] See Wingspan Records, Inc. v. Simone, 2014 WL 2116191, 2014 U.S. Dist. LEXIS 69718 (S.D.N.Y. May 15, 2014), ECF No. 90.  Asterisked citations are to the Westlaw electronic reporter.

from the Third Amended Complaint).   We recite only those facts that are essential to this opinion.

On January 26, 2006, plaintiff entered into a settlement agreement (the "Agreement") with several entities and individuals to resolve disputes over ownership and authorship of a musical composition entitled "Who Let the Dogs Out."   The named parties to the Agreement were Kingstreet Media (Music Publishing) 2, LLC ("Kingstreet"), as successor to Deston Songs, LLC ("Deston Songs")[2]; Hyckryck Music Publishing ("Hyckryck"); A. Scott Brooks; Charles Fulp; Osbert Gurley; Rodriguez Amar; and Anslem Douglas.

David Simoné and Winston Simone (the "Simone Defendants") are former employees and former partial owners of Deston Songs. Although the Simone Defendants sold their shares of Deston Songs and ceased their employment in March 2005, they continued to participate in the negotiations over the Agreement through execution of the Agreement in 2006.

Among other things, the Agreement provided that plaintiff, Hyckryck, and Mr. Gurley would share a 25% interest in "Who Let the Dogs Out."   Kingstreet was to pay $1,500,000 immediately to those three parties as a good faith estimate of their share of

---

[2] Deston Songs merged into Kingstreet before the Agreement was signed.   The Agreement itself refers throughout to Deston Songs, but the signature line reads, "Deston Songs, LLC (BMI) now known as 'Kingstreet Media (Music Publishing) 2, LLC.'"

gross earnings from 2000 to June 30, 2005. Next, Kingstreet was to furnish plaintiff with a schedule of revenues, and an independent audit (the "Initial Audit") was to determine by April 26, 2006, whether the $1,500,000 was in fact an overpayment or an underpayment of the royalties due through June 2005.

Kingstreet paid the $1,500,000 initial payment. In March 2006, plaintiff requested that Kingstreet provide a schedule of revenues and assist in conducting the Initial Audit. Kingstreet ignored plaintiff's request, and the Initial Audit never happened.

Instead, Kingstreet's successor by merger, Crosstown Music Company 1, LLC ("Crosstown"), finally produced an unaudited schedule of revenues on November 21, 2006. This schedule showed that the Initial Payment had overcompensated plaintiff by $251,321 for plaintiff's share of royalties earned before June 30, 2005. Crosstown also informed plaintiff that Crosstown had already deducted this $251,321 in June 2006 from royalties earned after June 30, 2005.

## II.   <u>PROCEDURAL HISTORY</u>

### A.   <u>The Complaints</u>

Plaintiff filed a complaint (the "Original Complaint") on March 23, 2012, against Kingstreet, Hyckryck, and BMG Rights Management (US), LLC (a company that began to perform

administrative duties relating to "Who Let the Dogs Out" sometime in or after 2008).  The Original Complaint alleged that Kingstreet and BMG had breached the Agreement by failing to conduct the Initial Audit, by failing to conduct another audit that plaintiff requested in 2010, and by paying Hyckryck and Gurley money owed to plaintiff.  The Original Complaint also sought a declaratory judgment regarding a 2002 agreement between plaintiff and Hyckryck.

On October 16, 2012, plaintiff filed an amended complaint (the "First Amended Complaint") in which, for the first time, plaintiff alleged that the Simone Defendants were jointly liable with Kingstreet and that David Simoné had received the $251,321 that Crosstown had withheld from plaintiff in June 2006.  Plaintiff served both Kingstreet and the Simone Defendants on October 23, 2012.[3]

In 2013, plaintiff settled with all defendants except for the Simone Defendants, and proposed two more amended complaints to state claims only against the Simone Defendants. Plaintiff's final version (the "Third Amended Complaint")[4]

---

[3] We had previously permitted plaintiff to serve the Original Complaint Kingstreet after the 120-day deadline of Rule 4(m) of the Federal Rules of Civil Procedure.  October 23 was within plaintiff's extended deadline for serving Kingstreet.

[4] The Third Amended Complaint has a tortuous history.  Plaintiff first sought leave to file a "Second Amended & Restated Complaint" on July 16, 2013 (ECF No. 61, Ex. A), in response to a motion to dismiss the First Amended Complaint.  But on August 16, 2013, when plaintiff filed the reply brief on its motion to amend, plaintiff attached a different pleading, also styled as

alleged that the Simone Defendants, as affiliates or partners of Kingstreet, breached the Agreement by failing to conduct the Initial Audit, or, alternatively, that the Simone Defendants were unjustly enriched when Crosstown diverted $251,231 of plaintiff's royalties to the Simone Defendants in June 2006.

**B.**   **The Motion to Dismiss**

The Simone Defendants moved to dismiss the Third Amended Complaint under Rule 12 of the Federal Rules of Civil Procedure or, in the alternative, under Rule 56.   The Simone Defendants argued, among other things, this plaintiff's claims were barred by the statute of limitations.   According to the Simone Defendants, plaintiff's breach of contract claim accrued when Kingstreet missed its deadline to perform the Initial Audit. This was three months after the execution of the Settlement Agreement, or on April 26, 2006.   Therefore, the six-year limitations period expired on April 26, 2012, several months before the First Amended Complaint stated claims against the

---

a "Second Amended & Restated Complaint" (ECF No. 73, Ex. A).   After conferring with the parties, we granted leave for plaintiff to file this second "Second Amended & Restated Complaint" as a "Third Amended Complaint," and we set a briefing schedule for a motion to dismiss.   See Memorandum & Order, Sept. 20, 2013, ECF No. 75.   But, instead of filing its August 16, 2013 proposal, plaintiff erroneously re-filed its First Amended Complaint from October 2012 as a "Third Amended Complaint" on September 25, 2013 (ECF No. 76).   Despite this error, the parties briefed the Simone Defendants' motion to dismiss with reference to the August 16, 2013 complaint, and we ruled on the merits of the August 16 complaint.

To be clear, the pleading that plaintiff appears to intend as its operative complaint, and to which we refer as the "Third Amended Complaint" both in this Memorandum and Order and in our Memorandum and Order of May 15, 2014, is the document that plaintiff filed on August 16, 2013 at ECF No. 73, Ex. A.

Simone Defendants.   Also according to the Simone Defendants, plaintiff's unjust enrichment claim for money damages accrued sometime in 2006.   Therefore, the three-year limitations period expired in 2009, long before plaintiff file a complaint against any defendant.[5]

In response, plaintiff argued that the amended complaints against the Simone Defendants related back to the original complaint of March 23, 2012.[6]   According to this argument, the Simone Defendants were aware of the original complaint and were aware that a mistake had occurred regarding the proper party's identity.   See Pl. Br. 18–19, ECF No. 85 (citing Fed. R. Civ. P. 15(c)(1)(C)).

Plaintiff did not point to any record evidence that the Simone Defendants knew of the original complaint or knew that a mistake had occurred regarding the proper party's identity.[7] Instead, plaintiff argued that the Simone Defendants had formed

---

[5] Plaintiff previously argued that a limitations period of six years applied to plaintiff's unjust enrichment claim.   Plaintiff has not asked us to reconsider this holding.

[6] Recall that the statute of limitations on breach of contract claims expired on April 26, 2012, six years after Kingstreet missed its deadline to complete the Initial Audit.

[7] Plaintiff suggested that discovery would show that the Simone Defendants actually learned of plaintiff's claims through Seth Lichtenstein, a former attorney for Kingstreet who was served a copy of the original complaint. This idea was largely based on an incorrect belief that Mr. Lichtenstein was named to receive notices on behalf of the Simone Defendants in the Simone Defendants' divestment agreement with Deston Songs.   See Pl. Br. 18; contra Membership Unit Purchase Agreement 33 (ECF No. 80, Ex. B) (designating Mr. Lichtenstein to receive notices for CFSC Capital Corp X).   Plaintiff acknowledged this error at oral argument, and did not propose any other person through whom the Simone Defendants might have received actual notice.

an "implied partnership" with Kingstreet under New York law, so that Kingstreet's knowledge could be imputed to the Simone Defendants.  <u>See</u> Pl. Br. 14–16, 19 (citing N.Y. P'ship Law § 23).

Plaintiff recognized that the complaint against the Simone Defendants could relate back to the original complaint only if the Simone Defendants knew (whether actually or constructively) of plaintiff's mistake "during the Rule 4(m) period."  Pl. Br. 19 (quoting <u>Smith v. Westchester County Department of Corrections</u>, 2012 WL 527222 at *5, 2012 U.S. Dist. LEXIS 19883 at *19 (S.D.N.Y. Feb. 15, 2012) (quoting <u>Krupski v. Costa Crociere S.p.A.</u>, 560 U.S. 538, 550 (2010))); <u>see</u> Fed. R. Civ. P. 15(c)(1)(C).

We granted the motion to dismiss for two independent reasons.

First, we rejected plaintiff's argument that the Simone Defendants received notice during the 120 days following the original complaint.  <u>See</u> Fed. R. Civ. P. 4(m) (2012).  We wrote: "[E]ven if [a Kingstreet attorney] had been served . . ., his knowledge cannot be imputed to the Simones merely because six years earlier, as former owners/employees of Deston, they helped negotiate the Agreement and received royalty payments from Crosstown."  <u>Wingspan Records</u> at *5, slip op. at 14.

Second, we held that, even if defendants received timely notice of the suit, they would not have known that "the action would have been brought against [them], but for a mistake concerning the proper party's identity." Fed. R. Civ. P. 15(c)(1)(C)(ii).[8]   Because the Simone Defendants had ceased their employment with Deston before the Initial Audit was to have been conducted, it would have been reasonable for them to think that plaintiff's decision to sue Kingstreet was a conscious choice rather than an accidental omission. Furthermore, because plaintiff had never demanded that the Simone Defendants perform an Initial Audit, the Simone Defendants could have reasonably assumed that plaintiff did not blame them for Kingstreet's and Crosstown's failure to conduct the audit.   Finally, it was irrelevant that the Simone Defendants supposedly knew that plaintiff was unaware that the Simone Defendants were no longer associated with Kingstreet; plaintiff has conceded that plaintiff was still unaware of that fact when plaintiff filed the First Amended Complaint, so plaintiff's ignorance could not have been a reason to omit the Simone Defendants from the original complaint.

We also analyzed relation back under New York state law. Cf. Fed. R. Civ. P. 15(c)(1)(A) (allowing relation back when

---

[8] We also discussed, but did not decide, the unsettled question of whether Rule 15(c) applies at all to the addition of a new defendant.

"the law that provides the applicable statute of limitations allows relation back"). For the same reasons as in our Rule 15(c)(1)(C) analysis, we concluded that defendants should not have known that the action should have been brought against them. Furthermore, the complaint against the Simone Defendants did not relate back to the complaint against Kingstreet because the Simone Defendants and Kingstreet were not "united in interest." Under New York law, "defendants are not united in interest if there is the mere possibility that the new party colud have a different defense than the original party." LeBlanc v. Skinner, 955 N.Y.S.2d 391, 398 (App. Div. 2d Dep't 2012). Because the Simone Defendants had terminated their formal relationship with Kingstreet's predecessor well before Kingstreet signed the Agreement, the Simone Defendants could present different defenses to plaintiff's contract claim, "[r]egardless of whether defendants could be considered affiliates or partners of Kingstreet." Wingspan Records at *8, slip op. at 22.

## III. DISCUSSION

### A.  Legal Standard

Winning parties have a strong interest in finality, and our judicial resources are finite. Reconsideration of an order is therefore an "extraordinary remedy," Montanile v. Nat'l Broadcasting Co., 216 F. Supp. 2d 341, 342 (S.D.N.Y. 2002), to

be granted only when we have overlooked controlling law or material facts, when new controlling law or evidence is available, or when we must correct a clear error or prevent a manifest injustice.  See, e.g., Local Civ. R. 6.3; Morales v. Quintiles Transnat'l Corp., 25 F. Supp. 2d 369, 374 (S.D.N.Y. 1998); Sutton v. Strack, No. 98-cv-6391(KMW)(THK), 2008 WL 2971464 at *3, 2008 U.S. Dist. LEXIS 58043 at *7 (S.D.N.Y. July 31, 2008).  Conversely, a motion for reconsideration is no occasion for a losing party to raise new arguments or to repeat arguments that the Court previously considered and rejected.  See HSBC Bank USA v. Hales, 438 F. Supp. 2d 228, 229 (S.D.N.Y. 2006); Morales, 25 F. Supp. 2d at 372.

**B.   Plaintiff's Old Arguments**

Plaintiff now presents two arguments that we considered and rejected in our May 15, 2014 Memorandum and Order.

First, plaintiff argues that plaintiff is entitled to discovery on the question of whether the Simone Defendants and Kingstreet formed an "implied partnership," because notice to one partner (Kingstreet) can be imputed to other partners (the Simone Defendants).  We disagree.  Assuming arguendo that the Simone Defendants and Kingstreet formed an implied partnership in 2006, it is not plausible that the "implied partnership" continued six years later, when plaintiff served Kingstreet.

Furthermore, discovery would be wasteful because plaintiff's "implied partnership" argument is ultimately a red herring. Plaintiff served the Simone Defendants and Kingstreet at essentially the same time,[9] so the Simone Defendants could not have received constructive notice through Kingstreet any sooner than they received actual notice themselves. Also, Kingstreet (like the Simone Defendants) had no reason to know the Simone Defendants would have been sued in the Original Complaint but for a "mistake," so we could not impute any knowledge of a mistake to the Simone Defendants by virtue of their implied partnership with Kingstreet.

Second, plaintiff argues that the Simone Defendants should have known that it was a "mistake" for the Original Complaint to omit the Simone Defendants. Our original opinion amply discussed several reasons why the Simone Defendants, even if they knew of the suit against Kingstreet, might reasonably have concluded that plaintiff's omission was intentional. Wingspan Records at *6–7, slip op. at 17–20. Plaintiff's rehash of its earlier arguments does not dissuade us from our earlier opinion.

---

[9] Kingstreet was served on October 23, 2012, by personal delivery to an authorized person. Both Simone Defendants were served on October 22, 2012, by express mail. See Affidavits of Service, Nov. 1, 2012, ECF Nos. 23, 24, 26.

C.   **Plaintiff's New Arguments**

Plaintiff also presents a series of arguments that plaintiff failed to advance previously.  Although plaintiff has forfeited these arguments, we describe each new argument to the extent necessary to satisfy ourselves that our previous Memorandum and Order contained no clear error.

First, plaintiff argues that Crosstown's wrongful withholding of royalties from plaintiff constituted an actionable breach of the Settlement Agreement, separate from Kingstreet's failure to accomplish the Initial Audit by April 26, 2006.[10]  Thus, according to plaintiff, a new limitations period began to run when an agent of Crosstown informed plaintiff on November 21, 2006, that Crosstown had withheld $251,321 in royalties from plaintiff in June 2006.

It is correct that each successive breach of a single contract marks the beginning of a new limitations period.  See Guilbert v. Gardner, 480 F.3d 140, 149 (2d Cir. 2007). However, it is not obvious that the limitations period for

---

[10] Plaintiff compares our choice of accrual dates to plaintiff's own miscalculation that March 26 came three months after January 26.  The difference between these "errors" is instructive.  Plaintiff's error was a simple mathematical error, and we would readily reconsider our decision if our decision had been based on a similar computational error.  But the choice between April 26 or November 21 was a choice between legal theories as to whether plaintiff's claim arose when Kingstreet missed the Initial Audit deadline or when Crosstown withheld royalties.  Plaintiff plausibly maintained that its claim arose when Kingstreet missed the Initial Audit deadline, and our acquiescence to plaintiff's position is not the kind of "plain error" that merits reconsideration.

Crosstown's withholding of royalties began on November 21, 2006. The limitations period for a breach of contract begins when the breach actually occurs, not when a promisee actually learns of the breach. _See_ _id._ Here, November 21, 2006, was the date when plaintiff learned that its royalties had been withheld, but the alleged breach took place in June 2006, when Crosstown actually withheld money from plaintff. Accordingly, the statute of limitations expired six years later, in June 2012.

_Second_, plaintiff now argues that relation back is appropriate under Rule 15(c) because we had extended the period under Rule 4(m) for plaintiff to serve Kingstreet.

It should be recalled that an amendment to change the naming of a party may relate back only if the correct party received notice of the action "within the period provided by Rule 4(m)." Fed. R. Civ. P. 15(c)(1)(C). Rule 4(m) requires a plaintiff to serve each defendant within 120 days of filing a complaint unless the court extends for "good cause." Here, we allowed plaintiff to serve Kingstreet after the 120-day period, by October 23, 2012. _See_ Endorsed Letter, July 17, 2012, ECF No. 13. So, according to the new argument, plaintiff's claims against the Simone Defendants relate back to the Original Complaint because the Simone Defendants were served with the First Amended Complaint on October 23, 2012, and thus learned

13

of the suit within the extended service deadline.  <u>See</u> <u>Hawthorne v. Citicorp Data Sys., Inc.</u>, 219 F.R.D. 47, 52 (E.D.N.Y. 2003).

Plaintiff's argument fails even if we agree with the unsettled rule that the "period provided by Rule 4(m)" includes additional time resulting from an extension under Rule 4(m). Rule 15(c)(1)(C) requires not only that a corrected defendant received notice of the action within the Rule 4(m) period, but also that the corrected defendant knew (or should have known) during the extended Rule 4(m) period that the action would have been brought against the corrected defendant but for a mistake. There was no reason for the Simone Defendants to know on October 23, 2012, that their omission from the Original Complaint was a "mistake."  As we explained in our previous Memorandum and Order, it would have been reasonable for the Simone Defendants to think that plaintiff had made a conscious decision to file claims only against other defendants.

<u>Third</u>, plaintiff now argues that the Simone Defendants failed to allege that the Simone Defendants lacked actual notice before the Rule 4(m) period ran out.  This simply ignores that it is <u>plaintiff's</u> burden to prove every element of relation back, including the Simone Defendants' actual notice. <u>See</u> <u>Dodson v. Hillcrest Sec. Corp.</u>, 95 F.3d 52 (5th Cir. 1996)

(unreported); <u>In re Enron Corp.</u>, 357 B.R. 257, 261 (Bankr. S.D.N.Y. 2006).

<u>Fourth</u>, plaintiff argues that the Simone Defendants were "united in interest" as partners with Kingstreet, so that an amendment to add the Simone Defendants may relate back under New York law. <u>See</u> Fed. R. Civ. Proc. 15(c)(1)(A); <u>Buran v. Coupal</u>, 661 N.E.2d 978, 981 (N.Y. 1995). We stand by our original analysis of New York law. Although partners may share interests, the "unity of interest" test for relation back requires an absolute identity of interest. If one defendant can put forward a colorable defense that the other defendant cannot, then the two defendants do not share a "unity of interest," regardless of their relationship under other substantive law.

Furthermore, as we have already stated, it is not plausible that the Simone Defendants remained "implied partners" with Kingstreet in 2012, when plaintiff sued Kingstreet.

Finally, plaintiff's argument fails to address plaintiff's fundamental problem that there was no reason for the Simone Defendants to believe that their omission from the Original Complaint was a "mistake."

### C.   **Manifest Injustice**

Finally, no "manifest injustice" leads us to question our original decision to dismiss this case.  Plaintiff has, at best, a tenuous claim against the Simone Defendants, who were not named as parties to the contract that they supposedly breached.  Moreover, by waiting until 2012 to sue <u>anyone</u> for a breach that was evident in April 2006, plaintiff risked that the statute of limitations might run out before plaintiff could file an amended complaint against new defendants.  Given these circumstances, we are more than satisfied with the justice of our original decision.

### CONCLUSION

Plaintiff has provided us with no reason to reconsider our dismissal of plaintiff's flawed, time-barred claims. Accordingly:

- plaintiff's motion for reconsideration (ECF No. 95) is denied;

- the clerk shall enter judgment in favor of defendants Winston Simone and David Simoné and close the case; and

- we retain jurisdiction to effectuate our order of September 20, 2013, awarding reasonable attorney's fees to the Simone Defendants.

Dated:     New York, New York
           December  5 , 2014


                                        NAOMI REICE BUCHWALD
                                        UNITED STATES DISTRICT JUDGE

Copies of the foregoing Memorandum and Order have been mailed
on this date to the following:

**<u>Attorney for Plaintiff</u>**

Lita Rosario, Esq.
1100 H Street, N.W., Suite 315
Washington, DC  20005

**<u>Attorney for Defendants</u>**

Joseph E. Gehring, Jr., Esq.
Gehring & Satriale LLC
370 Lexington Avenue, Suite 1200
New York, NY  10017